LORETTA SHROPSHIRE, Appellant, v. D. RYAN.

**Trust Relation:** FAIR DEALINGS: *Burden of proof.* Plaintiff assigned a claim in suit to defendant, who contracted to deed property to her; it being provided that out of the balance of the amount collected a fee should be paid to plaintiff's attorney, and certain debts of her husband settled. Four years thereafter a supplementary contract was executed, authorizing defendant and his law firm, which did not exist at the time of the assignment, to apply the proceeds of such claim to all claims held by them against plaintiff or her husband, and providing for a personal attorney's fee for defendant. There was no new consideration, and it is not shown that plaintiff had knowledge as to the claims against her husband. Afterwards, the original contract was cancelled, and all demands between defendant and his law firm and plaintiff and her husband settled. No written statements of charges and disbursements was ever given to plaintiff, and her testimony showed that there was no open and full accounting. At the time of the supplementary contract and settlement defendant was plaintiff's attorney, employed in collecting the claim assigned to him in trust for plaintiff. *Held*, that there was not sufficient proof to overcome the presumption of fraud as to the supplementary contract, arising from the trust relation existing between the parties.

PAYMENT AS SURETY: *Evidence.* Where, on accounting, defendant, attorney, testified that a certain amount was figured as the amount for which he and his partner were held liable as sureties, but did not testify such amount was paid, though he said he made payments and had taken receipts, and that another amount was paid on account of a defalcation of plaintiff, of

which he offered no other proof nor showed to whom it was paid, the evidence was insufficient to establish such claim.

ALLOWANCE ON ACCOUNTING.    Where receipts filed show certain moneys refunded by defendant attorney on account of plaintiff as administratrix, such moneys will be allowed to him on accounting.

**Estoppel:** CONSISTENCY: *Specific performance and annulment of contract.* Where plaintiff prayed for specific performance of a contract, thereby adopting the same, and asserting rights thereunder, and nowhere in her pleadings, intimated that such contract was invalid, she is estopped to claim that such contract is void because of a confidential relation existing between the parties thereto.

**Appeal:** OBJECTIONS TO CERTIFICATION: *Must be specific.* An objection to the certification of a record by the trial judge, which does not point out its insufficiency, will not be considered on appeal.

DEFECT IN PLEADING: *Waiver on first submission.* Where a petition prayed for specific performance and general relief, and the answer alleged an accounting and cancellation of the contract, which cancellation was admitted and accounting denied by the reply, and the case was tried on the theory of a full accounting, and on a first submission defendant raised no question of the sufficiency of the pleadings to warrant an accounting, but denied the accuracy thereof, such defendant is estopped on a second submission of the same appeal to question the sufficiency of the pleadings to justify an accounting.

*Appeal from Jasper District Court.*—HON. A. R. DEWEY, Judge.

THURSDAY, MAY 24, 1900.

THE plaintiff, in her petition, alleges that on the sixth day of January, 1886, the defendant entered into a written contract to convey her certain real premises in consideration of her assignment to him of a claim of some thirteen thousand dollars against one John Lyle. In her prayer she asks for a specific performance of this contract, "and for such other and further relief as equity and good conscience should give in the premises." The answer admits the making of the contract in substance as alleged by the plaintiff, and avers that it related to certain liti-

gation then pending in the supreme court of the United States, and that preceding this litigation, and on the fifteenth day of February, 1890, a certain other contract in writing was entered into between the plaintiff and her husband, A. C. Shropshire, and the defendant, and that subsequent to the execution of the two contracts, and after a final determination. of the litigation referred to, there was, on the sixth day of November, 1893, a full and complete accounting between this defendant and the plaintiff, in which the contract of January 6, 1886, was canceled in writing, and a full receipt given the defendant by this plaintiff and A. C. Shropshire, in words as follows: "Newton, Iowa, Nov. 6, 1893. Received of D. Ryan this day the sum of nine hundred dollars, in full of all demands to this date, and in full settlement of all matters between him and Ryan Bros. and ourselves. [Signed]    A. C. Shropshire.    Loretta Shropshire." In reply to this answer plaintiff admits that the cancellation on the margin of the contract was signed by her, and says that it was without consideration, and was procured by fraud on the part of the defendant. She denies an accounting, or that any sum was determined upon as due her as a result thereof, and alleges that her signature to said receipt was procured by the defendant through his false and fraudulent representations. Plaintiff also charges that the alleged instrument of February 15, 1890, is fraudulent and void. There was a trial to the court, and judgment for the defendant. The plaintiff appeals.—*Reversed.*

*Young, Gorrell & Rhinehart* and *C. C. Cole* for appellant.

*Wm. Phillips, Robert Ryan* and *W. O. McElroy* for appellee.

SHERWIN, J.—Upon the original submission of this cause it was affirmed by reason of a divided court, and no

opinion was written. The defendant, in argument, claims that the record is not properly certified by the trial judge, and that for this reason we cannot consider the case *de novo,* but does not point out wherein it is insufficient, and hence we pass this point. It is now urged that the pleadings are insufficient to warrant an accounting between the plaintiff and the defendant. Whatever doubt there may be as to this matter is rendered immaterial for the reason that the case was tried in the court below on the theory of a full accounting, as well as on the claim for a specific performance, and no question of this kind was raised or referred to in its former presentation to us. Indeed, the burden of defendant's argument was on the question of the full, accurate, and just accounting made upon the trial, and it is now too late to say that the pleadings did not justify it. It is not contended by the appellant that specific peformance of the contract sued on should have been decreed, and we turn our attention to the one controlling question in this case,—that of the accounting between plaintiff and defendant. On the sixth day of January, 1886, the plaintiff was the owner of a certain claim against one John Lyle, which was then in suit in the United States district court in Des Moines, and on that day she assigned all right and title thereto, and to any judgment recovered thereon, to this defendant. At the same time the defendant executed to her a written agreement, which recites the assignment of the Lyle claim to him, and in consideration thereof promises, when the claim is collected, to deed to the plaintiff his homestead in Newton, and provides that the balance of the amount collected shall be applied as follows: "One thousand dollars as atty.'s fees in said case, to be paid to plaintiff's attys." "The sum of money due from me to my sureties as admx. of estate J. S. Long." "Any remainder to be in full of all other accounts between said Ryan and Loretta Shropshire and A. C. Shropshire." We set out this much of that contract to enable a

better understanding of what follows. It is all that is pertinent to the issue before us. The contract of February 15, 1890, referred to in the statement of the case, is claimed by appellee to be supplemental to that of January 6, 1886. It provides that D. Ryan and Ryan Bros. shall receive from the collection of the Lyle claim "all sums of money now due or owing them or either of them, whether in note or due on book account, * * * and this shall include any sums due from Loretta Shropshire to the sureties on her bond as admx. of estate of J. S. Long; and it is further agreed that D. Ryan shall receive as his personal atty.'s fees in recovering said judgment vs. John Lyle sixteen (16) per cent. of the same when collected." The defendant is an attorney, and the relation of attorney and client had existed between plaintiff and him for a number of years prior to the transactions before us. The Lyle claim was placed in his hands for collection by the plaintiff, and suit brought thereon by him in Jasper county in 1883, and from there it was removed to the federal court in Des Moines. It also appears beyond question that the assignment of the Lyle claim to him was really in trust for the plaintiff, so that he sustained the dual relation to the plaintiff of trusted counsel and trustee of her property. Because of this confidential relation, the plaintiff now asserts that the contract sued on and the one set out in the answer are both void. The former has been adopted by the plaintiff, and her right to certain land is asserted thereunder. Nowhere in her pleadings has she intimated that it is a contract which should not be recognized, and she cannot now sustain such claim. That the relations existing between these parties required the utmost fairness and good faith on the part of the defendant is elementary, and conceded by the defendant. The confidence reposed in the attorney by the client, or in the trustee by the *cestui que* trust, is so carefully guarded by the law that it places the burden of proving the entire fairness of the pecuniary transactions between them

upon the attorney or trustee; and where a contract is entered into between them it is presumed to be fraudulent. *Ryan v. Ashton,* 42 Iowa, 365; *Leighton v. Orr,* 44 Iowa, 679; Pollock's Contracts 525; 3 Greenleaf on Evidence (13th ed.), section 253. Under this rule the burden is upon the defendant to prove the validity of the supplemental contract of February 15, 1890, and also the validity of the final settlement of November 6, 1893.

We have read and re-read the entire evidence in this case as presented by the reporter's transcript thereof, and reach the conclusion that neither the contract of February 15, 1890, nor the settlement of November 6, 1893, can be upheld. This supplemental contract, as it is termed by the defendant, enlarges the original one in these respects. In the first place, it gives the defendant authority to apply the proceeds of the Lyle claim to the payment of any and all claims held by D. Ryan, or by Ryan Bros., against either the plaintiff or her husband, whether in note or due on book account. In the second place, it provides a personal attorney's fee for the defendant of 16 per cent. on the amount collected. It appears from the record that A. C. Shropshire was the second husband of the plaintiff, and it does not appear that he owned any interest in the Lyle claim. At the time the assignment of this claim was made to D. Ryan, no such firm as Ryan Bros. was in existence, though previous thereto a law partnership under that name had been carried on by the defendant and his brother. A. C. Shropshire owed this firm on book account, and owed the defendant both on book account and on notes, according to the defendant's testimony; but no legal or moral liability of the plaintiff to pay his debts either to D. Ryan or to Ryan Bros. is shown, except as provided for in the contract of January 6, 1886. No consideration is proven to have passed for this greatly enlarged liability of the plaintiff, amounting to nearly three thousand dollars. True, she admits that her signature is

attached to the paper, but this is not enough. The defendant must prove the *bona fides* of this transaction, and a sufficient consideration for the contract. He does not claim a new consideration entered into it, nor is it made to appear that the plaintiff knew or was advised as to the amount or character of the claims held against A. C. Shropshire, with which defendant proposed to charge her. The proof fails to show a contract that should be sustained. The settlement of November 6, 1893, and the cancellation of the 1886 contract must be held for naught for the same reasons applying to the contract. There is a decided conflict in the testimony touching what transpired at that time. The defendant does not claim that a written statement of the charges against and disbursements of this fund was ever given to the plaintiff, or that she ever had an opportunity to examine his books relative thereto. The most that is claimed is that he read over the items, and explained them to the plaintiff, and told her that nothing was due her out of the five thousand three hundred dollars collected on the Lyle claim. This claim had been in litigation for many years, and involved a considerable sum of money. When a settlement was finally made with the plaintiff, she should have been advised in the most detailed manner of the charges against the fund. That such information was not furnished her, is apparent from the condition of the record before us. No statement is attached to the pleadings showing items of account charged to her or to A. C. Shropshire, nor are the books or transcripts therefrom here for our examination, and even the evidence to sustain many of the charges alleged to exist is uncertain and vague. In addition to this, we have the plaintiff's testimony as to what took place at the time. It is sufficient to say that we cannot disregard this, and that it is against an open and full accounting.

It is somewhat difficult to determine just what credits the defendant should be allowed. The burden still rests with him to fairly establish his claims against the plaintiff which

are not conceded. It is conceded by the plaintiff that he is entitled to credit for one thousand two hundred dollars attorney's fee paid. Phillips & Day, five hundred and thirty-one dollars and fifteen cents paid in settlement of the Quinton garnishment, and for nine hundred dollars paid at the November, 1893, settlement. Under the 1886 contract, an attorney's fee of one thousand dollars was provided for, which, we think, was intended to be in full for the service of attorneys in prosecuting the case, and we think the conclusion may be fairly drawn from the evidence as a whole that it was then thought that this sum would be about ten per cent. of the final amount collected on the Lyle claim. Notwithstanding the fact that a fee of one thousand two hundred dollars was paid to Phillips & Day, we think the defendant should be allowed ten per cent. on the five thousand three hundred dollars finally collected, thus giving him five hundred and thirty dollars for his services in the case. It does not appear that he took an active part therein after it went to the federal court, and this is, we think, a fair allowance under the evidence.

On his direct examination the defendant testified that at the time of the November, 1893, settlement A. C. Shropshire owed him on book account six hundred and twenty dollars. On his cross-examination he said there was due him on book account from A. C. Shropshire at that time a balance of one hundred and eight dollars. It is impossible for us to tell which sum is correct, and hence we credit him with one hundred and eight dollars, which we think should be allowed under the contract of 1886. It may be that the defendant had an account against the plaintiff for six hundred and twenty dollars in his mind when he testified as above, for, later on, in speaking of an account of six hundred and twenty dollars and eighty-two cents against the plaintiff, he says it is the one he had refered to before. We find it proven that the defendant refunded to A. L. Dalrymple, John Morrison, W. H. Langan, and R.

Johnston one hundred dollars each on account of plaintiff as administratrix of the J. S. Long estate. Two of these witnesses testify that the money they advanced was to pay costs in the Lyle case, but the receipts filed show differently, and we conclude they were mistaken in the matter. We find but two of the receipts offered in evidence, but the others accompany the exhibits in the case, and are supported by testimony, so we consider them as in evidence. The testimony as to payments to other sureties and as to payments as sureties by Ryan Bros. is altogether too indefinite and unsatisfactory to rely upon. In his testimony the defendant says that one thousand two hundred and thirty-six dollars and forty-five cents was figured in at the time of the settlement for which Ryan Bros. were held liable. He does not say there that any such amount had been paid. He, in another place, says he was anxious to protect the sureties, and did pay them back, and took receipts. He also claims that the balance of this money was paid on account of the defalcation of plaintiff as administratrix, but no other proof thereof is offered, nor is it shown to whom one dollar of it was paid. Surely, it would have been an easy matter for the defendant to put the question at rest by the evidence within his reach. If the condition was such as claimed, he ought at least to have shown to whom, when, and in what amounts these other payments were made. Having failed to make his proof on this question as complete as he ought, we cannot allow the credit claimed. It is claimed by defendant that a book account of six hundred and fifty-seven dollars was due Ryan Bros., but from whom does not appear, though an inference may be drawn from the defendant's testimony that it was the debt of A. C. Shropshire, for on cross-examination he says, in substance, that all he had charged to the plaintiff was the one thousand two hundred and thirty-six dollars due the sureties. If it was the debt of the husband, plaintiff could not be charged with it, as we have heretofore said.

The foregoing items and amounts are all, we think, the evidence justifies us in allowing the defendant credit for. The total principal amounts to three thousand six hundred and sixty-nine dollars and fifteen cents. To this we add, as have counsel in making their computations, interest on the entire sum, except the four hundred dollars paid the sureties, for the term of six years, two months, and twenty-nine days, to February 1, 1900. On the four hundred dollars, which the receipts show was paid February 24, 1894, we allow interest also to February 1, 1900; making the total interest credit one thousand three hundred and sixty-seven dollars and five cents. Total amount, principal and interest, five thousand thirty-six dollars and twenty cents.

It is urged that the defendant should be charged with four hundred dollars and the interest thereon collected on the Chamberlain matter, but we think the evidence does not support this claim. We therefore disregard it. The amount then, with which the defendant should be charged is the five thousand three hundred dollars collected on the Lyle claim, with interest on three thousand dollars for six years, two months, and twenty-nine days, and on two thousand three hundred dollars for five years, eleven months, and nine days, which makes a total charge of seven thousand two hundred and forty-four dollars and forty-five cents. Deducting from this the amount of credit allowed leaves a balance due the plaintiff of two thousand two hundred and eight dollars and twenty-five cents, for which sum she may have judgment in this court, with interest from February 1, 1900. The judgment of the district court is REVERSED.