CAPITAL CITY CARRIAGE COMPANY, Appellant, v. MOODY & SON ET AL.

**Sales:** TRANSFER OF TITLE. The title to personal property, under 1 a contract for its transfer clearly indicating that something remains to be done to the property before delivery, does not pass until performance of the condition; and where the evidence is conflicting on the question of performance the issue is for the jury.

**Written contracts:** UNDERSTANDING OF PARTIES: SUBMISSION OF IS-
2 SUE. The question of whether a written contract of sale was understood by one of the parties in a different sense from that indicated by its plain and unequivocal language, should not be submitted to the jury.

**Contracts:** PERFORMANCE: EVIDENCE. Readiness to perform a con-
3 tract by the party who is to make a payment upon performance of certain conditions by the other is immaterial, so long as such other party is in default.

**Same:** SUBMISSION OF ISSUE. Where there is a controversy over 4 the question of whether the conditions of a contract for the

transfer of personal property have been performed the issue should be submitted to the jury.

*Appeal from Jasper District Court.*— HON. JOHN T. SCOTT, Judge.

TUESDAY, MARCH 5, 1907.

REHEARING DENIED, FRIDAY, SEPTEMBER 27, 1907.

PLAINTIFF'S petition is in three counts in the first of which it asks recovery on a promissory note executed to it by defendants; in the second, recovery for an amount due as balance of account; and, in the third, damages for breach of written contract to deliver certain buggies to plaintiff at Des Moines in good condition, free of charges for transportation. The claim for recovery under the third count is in the alternative, on condition that recovery is not allowed to plaintiff on the first and second counts. As to the claims made in the first and second counts, the defendants allege payment by performance of the written contract with reference to the delivery of the buggies to plaintiff at Des Moines, and, as to the third count, they allege full performance of the contract. Defendants also interpose a counterclaim for breach by plaintiff of the written contract of settlement referred to in the pleadings of both parties, such breach consisting, as alleged, in the enforcement against defendants of a note which was to have been settled and discharged by plaintiff as a part of the consideration of such contract. There was a trial to a jury, and a verdict for defendants on their counterclaim. From judgment on this verdict plaintiff appeals.— *Reversed.*

*Woodin & Ayres* and *O. C. Meredith & Son,* for appellant.

*Norris & Norris,* for appellees.

McCLAIN, J.— The transactions between the parties involved in this controversy, so far as necessary to an understanding of their respective claims, are, briefly stated, as follows: Plaintiff, a manufacturer of buggies at Des Moines, having sold and delivered to defendants, retail dealers at Searsboro, a number of buggies for which defendants had paid in part by the execution of two promissory notes, which were past due, sent its representative to defendants' place of business to effect a settlement; and, after negotiations between this representative and defendants, a written agreement was entered into as follows:

This agreement made and entered into this 4th day of August, 1905, witnesseth, that, in consideration of the return of the following buggies and carriages to be taken back by Capital City Carriage Co., at the following prices [the buggies are here described by number and prices] Moody & Son agrees to pay balance due on the notes and account herein named after deducting said jobs returned $307.10, on surrender of the two notes, $385.41 each, and book account of $104.26. Said $307.10 to be paid by Moody & Son as soon as notes are sent to Bank of Searsboro together with receipt for their book account in full. Said jobs to be complete, as described in contract between said parties dated February 25, '05, and delivered in good condition f. o. b. Des Moines, Iowa, at once.

The buggies described in the contract were shipped by defendants to plaintiff at Des Moines but were refused on the ground that they were not in the condition required by the terms of the contract. Afterwards suit was brought against defendants on one of the notes included in the settlement, by a bank to which it had been transferred, and judgment recovered against defendants thereon, which judgment has been paid. Plaintiff seeks to recover the amount due on the other note, and the balance due on account, and defendants allege full performance on their part of the contract of settlement; and by way of counterclaim for damages for

breach of such contract, defendants seek to recover the amount which they have been compelled to pay in satisfaction of the judgment on the note sued upon.

It was contended for defendants on the trial of the case that plaintiff's representative, during the negotiations for the settlement, inspected the buggies which were to be returned, and that, by the agreement finally entered into, title to those buggies passed to plaintiff, with a collateral undertaking on the part of defendants that they would make good any damage sustained during the transportation of the buggies to the plaintiff at Des Moines, and pay the freight for such transportation and that therefore plaintiff could not refuse to accept the buggies on account of breach of the collateral agreement, and sue on the original indebtedness, but could only recover from defendants damages for breach of the collateral agreement with reference to transportation and delivery of the buggies; while, for the plaintiff, it is contended that the delivery of the buggies at Des Moines free from charges for transportation, and in the condition described in the contract, was a condition precedent to the passing of title to plaintiff; and as this condition precedent was not performed, plaintiff was justified in refusing to receive the buggies, and could thereupon recover on the original indebtedness. Evidence was received, over plaintiff's objection, as to the extent of the examination of the buggies made by plaintiff's representative at Searsboro, and the court instructed the jury that, if it should be found that, by the agreement between the parties, plaintiff was to receive back the buggies in the same condition that they were in, and that both parties so construed the contract between them, and that defendants did ship the buggies and prepay freight, then plaintiff could recover nothing on its original claims against defendants, but could only recover such damage as plaintiff had suffered by injury to the buggies during transportation.

In determining whether the trial court took the correct

view as to the theory on which the case should be submitted to the jury, we first notice the terms of the contract of settlement, which provides "that in consideration of the return of the following buggies and carriages to be taken back," by plaintiff, and the payment of a sum of money specified on return of the notes and receipt for book account in full, the obligations of defendant are to be extinguished, and that the buggies to be returned are to be complete, as described in the previous contract by which the buggies were sold, " and delivered in good condition " at once.   This agreement evidently contemplated that something remained to be done on the part of defendants before the title of the buggies was to pass to plaintiff, and the indebtedness of the defendants to plaintiff was to be satisfied.   It may be true that under a contract of sale the question as to when title passes depends to some extent on the intention of the parties; but, if the contract is in writing, the intention is to be gathered from the written instrument.   *Leonard v. Davis,* 1 Black (U. S.) 476 (17 L. Ed. 222); *The Elgee Cotton Cases,* 22 Wall. (U. S.) 180 (22 L. Ed. 863); *First Nat. Bank v. Reno,* 73 Iowa, 145; *Foster v. Ropes,* 111 Mass. 10; Mechem, Sales, sections 500–502, 509–511, 534–536.   We think that this instrument plainly indicates the intention to be that title shall pass when defendants comply with the conditions imposed.   Counsel for defendants cite cases holding that there may be a completed contract of sale under which title passes, although the seller remains in actual possession of the property with obligation to make delivery.   *Terry v. Wheeler,* 25 N. Y. 520; *Hayden v. Demets,* 53 N. Y. 426; *Rail v. Little Falls Lumber Co.,* 47 Minn. 422 (50 N. W. 471).   But in these cases, and others of the same character which might be cited, it is assumed that the identity of the property and its condition have been agreed upon and settled.   But in this case, while the identity of the property is determined by the contract, . there is an express stipulation that it shall be in a certain

1. SALES: transfer of title.

condition when delivered at Des Moines, and that if it should not be in this condition, then plaintiff would be under no obligation to accept it.   There was a conflict in evidence as to the condition of the property when tendered in Des Moines for delivery by the railroad company transporting it, and the court should have submitted to the jury the question whether, thus tendered, it was in the condition required by the terms of the contract.

The trial court further erred in leaving it to the jury to say whether the written contract was understood by the defendants in a different sense than that indicated by its plain and unequivocal language.   Since this case was submitted, we have held in the case of *Inman Manufacturing Co. v. American Cereal Co.,* 133 Iowa, 71, that it is not competent under Code, section 4617, to show that a party to a written contract understood it in a different sense than that indicated by its terms, where those terms have definite meaning, to be derived by legal interpretation from the language used.   The rule of law recognized in the statutory provision just referred to may well be applicable in determining what the parties meant by the term " good condition," for such term has no definite legal significance; but it was not competent to show that the stipulation as to the time when the buggies must be in good condition under the contract was understood by the defendants with plaintiff's knowledge, to be the time when plaintiff's representative inspected them at Searsboro, rather than the time when they should be delivered in Des Moines.   There was a conflict in evidence as to the extent of the inspection by plaintiff's representative at Searsboro, and also as to the amount of damage sustained by the buggies while in transportation; and the jury reached the conclusion that some damage had been sustained during transportation, for the amount of the verdict shows that they reduced the amount of defendants' counterclaim by some allowance to plaintiff under the third count of its petition.

2. WRITTEN CON-
TRACTS: under-
standing
of parties:
submission
of issue.

If the jury had been properly instructed that the language of the contract had reference to the condition of the buggies when delivered in Des Moines, it is reasonable to suppose that they would have found that defendants did not comply with the written contract to deliver the buggies to the plaintiff in Des Moines in good condition, and therefore a verdict for plaintiff on the substantial controversy in the case might well have been rendered.

In view of another trial, it is proper to say that the question whether defendants had on deposit in the bank at Searsboro the sum of money which they were required by the contract to pay on surrender of the notes and tender of a receipt for balance of account, was immaterial, inasmuch as plaintiff has never tendered the notes, nor receipt, as required by the contract.

3. CONTRACTS: performance: evidence.

There was some controversy on the trial as to whether the charges for transportation of the buggies to Des Moines had been fully prepaid by defendants; plaintiff's contention being that there was still a charge of $1.16. On this question the case should have been submitted with reference to whether the condition of the contract to deliver free of transportation charges had been performed by the defendant.

4. SAME: submission of issue.

Appellee's motion to strike from appellant's reply additional grounds for reversal not set out in its original argument, which has been submitted with the case, is sustained, and the additional grounds thus stated have not been considered in determining the case.

For the errors pointed out as to the theory on which the case was submitted to the jury, the judgment must be *reversed.*