ELBERT A. READ et al., Appellants, v. FERGUSON, BARNES & FERGUSON et al., Appellees.

No. 45040.

AUGUST 6, 1940.

REHEARING DENIED NOVEMBER 15, 1940.

Addison G. Kistle and Henry Read, for appellants.

Homer S. Stephens, Earl R. Ferguson, C. R. Barnes, and Paul Ferguson, for appellees.

SAGER, J.—Plaintiffs are assignees of H. T. Read, owner of the building during the period of tenancy here involved. Appellees deny this but the court, after hearing, found that they were so and substituted them as parties-plaintiffs. We are satisfied that the action of the trial court in this regard was right.

The individual defendants are, or were, members of their partnership, co-defendant. It was a law firm which for many years occupied a part of the Read building. This case is concerned with the period from September 1, 1918, to December 31, 1926. The record is a splendid exemplification of the saying that many lawyers are lax in the management of their own affairs. Appellees have had to conduct their defense without the aid of books, checks or other memoranda and, by their own concession, could not have established the payments which appellants in their statement of account admit they made. This, with the further fact that the case was tried nearly nine years after the last item of plaintiffs' bill, may well account for the unsatisfactory state of the record.

Plaintiffs' first complaint is the overruling by the trial court of their objection to permitting the defendants to plead their counterclaim. It is urged that if such existed it was the property of the partnership and not of the individual members thereof. Our attention is called to section 11151, Code of Iowa, 1935; Jordison v. Jordison Bros., 215 Iowa 938, 247 N. W. 491; and Jensen v. Wiersma, 185 Iowa 551, 170 N. W. 780. On the record before us, these are not controlling. As we have said, this is an equity case. All the parties in interest were before the court and no questions on the rights of third parties were

involved, save as appellees argue that the claim for rent belongs to the estate of H. T. Read. This contention was disposed of by the ruling of the court that the claim had been assigned to plaintiffs. The individual defendants were the members of the partnership and all claim to be joint owners of the counterclaim or offset. We fail to see why the court should not determine the whole matter. Neither the authorities cited above, nor any found in the briefs, announce any rule to the contrary. The lower court properly allowed the counterclaim or offset to remain in the issues.

■ Plaintiffs next argue that the court erred in its ruling that the claim covering the period from September 1, 1918, to September 1, 1920, was barred by the statute of limitations. We hold this complaint justified. There is no dispute about the occupancy of the premises during this period. The space occupied to September 1, 1920, was smaller than that used later. Desiring larger and better quarters, defendants asked for and obtained offices to their liking nearly twice the former size. At this time the rent was raised from $22.50 or $25 to $50 per month and the heat bill was to be paid in the proportion which this space bore to the whole building. The arrangement was that the entire heat bill was to be paid in the first instance by the landlord. It is the claim that at this time the landlord, H. T. Read, said that the rent from that time on was to be paid to him and not to his son.

The instances just narrated are made the basis of the contention that the continuity of the account was broken. It is urged that a new and separate contract was entered into and that the statute barred all the plaintiffs' claim for rent before September 1, 1920. The trial court took this view and in doing so, we think erred. There was no settlement, no adjustment or offsetting of accounts. Appellees, from September 1, 1918, to January 1, 1927, occupied the premises with the full understanding of the rent to be paid. The parties dealt with each other in confidence without thought of strict observance of the laws which covered the relation of landlord and tenant. Services were rendered for the landlord and for the bank in which he

had an interest from 1916 until the bank closed. In the language of one of the defendants:

"Ordinarily bills were not rendered to the Reads. We usually had adjustments from time to time. That is just a custom that grew between those people and our firm. We let things go and they let things go, that is, neither was 'johnny-on-the-spot' to collect things from the other."

The claim that there were adjustments from time to time is not sustained by the record. Defendants argue that the change in office space, larger rental, and increased heat expense, closed the account theretofore existing on September 1, 1920. They cite many cases which they claim support this view. We find none to that effect and we deem it unnecessary to analyze them. Appellants cite these cases on this question: Moser v. Crooks, 32 Iowa 172; Carroll v. McCoy, 40 Iowa 38; Kilbourn v. Anderson, 77 Iowa 501, 42 N. W. 431; Cedar County v. Sager, 90 Iowa 11, 57 N. W. 634; Higley & Co. v. B. C. R. & N. Ry. Co., 99 Iowa 503, 68 N. W. 829; Soderland v. Graeber, 190 Iowa 765, 180 N. W. 745; Tucker v. Quimby, 37 Iowa 17. Appellees rely upon these, among others: Muir v. Bozarth, 44 Iowa 499; Dibol & Plank v. Minott, 9 Iowa 403; McDaniels v. Whitney, 38 Iowa 60; Richmond & Jackson v. D. & S. C. R. Co., 40 Iowa 264; Wernli v. Collins, 87 Iowa 548, 54 N. W. 365; Aultman & Taylor Co. v. Lawson, 100 Iowa 569, 69 N. W. 865; Boyd & Williams v. Watson & Co., 101 Iowa 214, 70 N. W. 120; Galt v. Provan, 131 Iowa 277, 108 N. W. 760; Pacific Timber Co. v. Windmill & Pump Co., 135 Iowa 308, 112 N. W. 771; Cole v. Harvey, 142 Iowa 574, 120 N. W. 97; Quarton v. Law Book Co., 143 Iowa 517, 121 N. W. 1009, 32 L. R. A., N. S., 1; Bamberger Bros. v. Burrows, 145 Iowa 441, 124 N. W. 333; Sauser v. Kearney, 147 Iowa 335, 126 N. W. 322; Stoner-McCray v. Manhattan Co., 176 Iowa 630, 156 N. W. 683; Comptograph Co. v. Burroughs, 179 Iowa 83, 159 N. W. 465; Ayres v. Nopoulos, 204 Iowa 881, 216 N. W. 258; Lockie v. Baker, 206 Iowa 21, 218 N. W. 483; Peek Estate v. New York Life Ins. Co., 206 Iowa 1237, 219 N. W. 487.

Plaintiffs next urged that the court erred in allowing defendants' counterclaim. It is sufficient to say that after a careful study of the record, we do not feel like substituting our opinions for those of the trial court on that branch of the case. It properly allowed the counterclaim.

On defendants' appeal it is urged that the court erred in allowing plaintiffs anything on the account from September 1, 1920, to September 3, 1926. We are not certain that we understand appellees at this point. They seem to argue that the presentation of a statement (Exhibit No. 7), under date of September 3, 1926, for the rent from January 1, 1926, to September 1, 1926, had the result of canceling all that had been due before because, they say, such presentation resulted in an account stated. It could not have and did not have that effect for two reasons: First, it was not so intended; and second, it was not accepted as such but was met with a claim of offset. A glance at Porter v. C., I. & D. Ry. Co., 99 Iowa 351, 68 N. W. 724; and Morse & Littell v. Minton, 101 Iowa 603, 70 N. W. 691, readily distinguishes them; and Raymond Bros. v. Williams & Chapman, 40 Iowa 117, 118, is rather an authority against appellees than for them. We quote:

"But the question in this case is, whether continuous dealings, represented in one account, may be divided into separate accounts, which will be presumed liquidated simply by the rendering and presentation of bills of items covering parts of the transactions. We think this cannot be done. All of the transactions are to be regarded as one account, and the mere fact that bills of items were frequently rendered by the creditor, does not require it to be considered as more than one; nor will the separate bills rendered for parts of the account together, be regarded as a liquidation of the whole."

Another argument on defendants' appeal is that plaintiffs failed to prove that the rent account was not paid. We do not agree. One of the plaintiffs who had charge of the matter for his father swore that it was not paid and the testimony on the subject coming from the defendants does not rise above

the statement of a general conclusion that the firm bills were all paid when the firm was dissolved. As stated they had no books, checks or other memoranda. In fact it would seem that each member of the firm expected some other member to look after the bills and finally, if we read the record aright, this was a matter left to the girls in the office. These girls were not called as witnesses for the stated reason that "they do not live here" without any explanation of where they lived or why they could not be present to testify. Appellees argue the burden of proof was on the plaintiffs to establish the claim and its nonpayment. We are satisfied that plaintiffs met that burden.

It is insisted that each month's rent was a distinct and separate debt maturing on the first of each month and for that reason each was barred five years from the date it was due. What we have already said disposes of that contention.

Other propositions are urged but they do not call for specific attention except perhaps the one that the rights of the estate of H. T. Read, or the administrator, had not been adjudicated. What we have already said shows that there is no such question in the case. Moreover, if this contention be true, appellees should have caused administration to be taken out and have presented their claim for payment for professional services in the probate court. Instead they waged a vigorous and successful contest to have them allowed in this cause. We have deemed it to no purpose to cite, much less to analyze, the many cases appearing in the briefs. They announce only familiar principles. Neither have we found it worthwhile, this being an equitable case, to take note of the distinction between the offset in equity and a counterclaim at law, but see Johnston v. Grimm, 209 Iowa 1050, 1056, 229 N. W. 716, 719; and 57 C. J. 361, section 4 et seq. All of appellees' citations on the right to present their counterclaim are cases at law.

On the whole record, we conclude that plaintiffs established their claim in the sum of $1,583 and the defendants, their counterclaim in the sum of $803.84; and that plaintiffs are entitled to a judgment for the difference; $779.16, with interest at the rate of 5 percent from the date of the judgment below,

to wit: December 1, 1938. The cause is reversed on plaintiffs' appeal and remanded for a judgment in accordance herewith. Finding no merit in defendants' contentions, the case is affirmed on their appeal. The motion to strike amendment to abstract submitted with the case is overruled.—Reversed and remanded on plaintiffs' appeal; affirmed on defendants' appeal.

OLIVER, MILLER, HAMILTON, HALE, and BLISS, JJ., concur.